IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DIVISION

BLAIR DOUGLASS, on behalf of himself and all others similarly situated,

              Plaintiff,

     v.

LEVAIN BAKERY COOKIE COMPANY, LLC,

              Defendant.

Case No. 2:25-cv-01722-MPK

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
TO CERTIFY CLASS FOR SETTLEMENT PURPOSES AND FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION  .................................................................................. 1

II.     HISTORY OF THE LITIGATION  ...................................................... 1

III.    SUMMARY OF THE AGREEMENT  .................................................. 2

        A.      Key Terms Used in the Agreement .................................................. 2

        B.      Remediation Obligations  ................................................................. 2

        C.      Additional Obligations of the Parties .............................................. 3

                1.      Accessibility Training ........................................................... 3

                2.      Defendant's Reporting Obligations  ...................................... 3

                3.      Plaintiff's Compliance Monitoring Obligations  ................... 3

                4.      Enforcement and Dispute Resolution  ................................... 3

        D.      Enjoining Settlement Class Members From Asserting Released Claims ............. 4

        E.      Incentive Award For Plaintiff ......................................................... 4

        F.      Attorneys' Fees and Costs  .............................................................. 5

IV.     ARGUMENT ....................................................................................... 5

        A.      The Court Should Certify the Class for Settlement Purposes ........... 5

                1.      Plaintiff Satisfies the Requirements of Rule 23(a) ................. 5

                        (i)     Numerosity ................................................................. 5

                        (ii)    Commonality .............................................................. 6

                        (iii)   Typicality ................................................................... 6

                        (iv)    Adequacy ................................................................... 7

                2.      Plaintiff Satisfies the Requirements of Rule 23(b)(2) ............ 7

        B.      The Agreement is Fair, Reasonable, and Adequate, and Should be Preliminarily Approved ..................... 8

                1.      The Agreement is Presumptively Fair ................................... 9

                        (i)     Negotiations Occurred at Arms' Length ...................... 9

        (ii)    Robust Discovery Was Not Required Because the Accessibility of Defendant's Website Was Obtained Independently ................................................................ 9

        (iii)   Plaintiff and Plaintiff's Counsel Are Experienced in Similar Litigation ......................................................... 9

        (iv)   Given the Terms, Plaintiff Anticipates No Objections ............... 10

    2.      The *Girsh* and *Prudential* Factors Favor Preliminary Approval ............ 10

        (i)     Complexity, Expense, and Likely Duration of Litigation .......... 11

        (ii)    Reaction of Class to Settlement .................................... 11

        (iii)   Stage of Proceedings and Discovery Completed ...................... 11

        (iv)   Risks of Establishing Liability and Damages ............................ 12

        (v)     Risks of Maintaining Class Action Through Trial ..................... 12

        (vi)    Ability of Defendant to Withstand Greater Judgment ................ 12

        (vii)   Range of Reasonableness of Settlement in Light of Best Possible Recovery and All Attendant Risks of Litigation .......... 13

        (viii)  *Prudential* Factors ....................................................... 13

  C.     The Proposed Notice and Notice Plan Satisfy the Requirements of Rule 23(e) and Due Process ............................................................... 13

V.    CONCLUSION ................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ........................................................................ 6, 7, 8

*Cureton v. NCAA*, No. 97-cv-00131,
    1999 U.S. Dist. LEXIS 9706 (E.D. Pa. July 1, 1999) ........................................ 5, 6

*Dieter v. Aldi, Inc.*, No. 2:18-cv-00846,
    (W.D. Pa. Aug. 29, 2019) ........................................................................ 5

*Douglass v. iFit Inc.*, No. 2:23-cv-00917,
    2024 U.S. Dist. LEXIS 243178 (W.D. Pa. Apr. 11, 2024) ................................ 1, 5

*Douglass v. Lifetime Products Inc.*, No. 2:25-cv-00782,
    (W.D. Pa. Sept. 3, 2025) ........................................................................ 11

*Douglass v. Melnor, Inc.*, No. 2:25-cv-00670,
    2025 U.S. Dist. LEXIS 203770 (W.D. Pa. Oct. 16, 2025) ................................ 1, 5

*Douglass v. Optavia, LLC*, No. 2:22-cv-00594,
    2023 U.S. Dist. LEXIS 246835 (W.D. Pa. Jan. 23, 2023) ................................ 1, 5

*Douglass v. P.C. Richard & Son, LLC*, No. 2:22-cv-00399,
    2023 U.S. Dist. LEXIS 246830 (W.D. Pa. June 27, 2023) ................................ 1, 5

*Douglass v. Whitestone Home Furnishings, LLC d/b/a SAATVA*, No. 2:25-cv-00460,
    2025 U.S. Dist. LEXIS 188296 (W.D. Pa. Sep. 15, 2025) ................................ 1, 5

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ........................................................................ 10

*Hassine v. Jeffes*,
    846 F.2d 169 (3d Cir. 1988) ........................................................................ 7

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ........................................................................ 11

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
    934 F.3d 316 (3d Cir. 2019) ........................................................................ 9

*In re NFL Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016) ........................................................................ *passim*

*In re Pet Food Prods. Liability Litig.*,
   629 F.3d 333 (3d Cir. 2010) ............................................................ 10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ........................................... 8, 11, 13, 14

*In re Prudential Ins. Co. Of Am. Sales Practice Litig.*,
   261 F.3d 355 (3d Cir. 2001) .............................................................. 4

*Jahoda v. Redbox Automated Retail, Inc.*, No. 2:14-cv-01278,
   (W.D. Pa. Oct. 31, 2017) .................................................................. 4

*Kaplan v. Chertoff*, No. 06-cv-05304,
   2008 U.S. Dist. LEXIS 5082 (E.D. Pa. Jan. 24, 2008) ..................... 19

*Kokkonen v. Guardian Life Ins. Co. Of Am.*,
   511 U.S. 375 (1994) ........................................................................... 4

*Murphy v. Charles Tyrwhitt, Inc.*, No. 1:20-cv-00056,
   2022 U.S. Dist. LEXIS 255976 (W.D. Pa. Feb. 16, 2022) ............. 1, 5

*Murphy v. The Hundreds Is Huge, Inc.*, No. 1:21-cv-00204,
   2022 U.S. Dist. LEXIS 211942 (W.D. Pa. Nov. 17, 2022) ............. 1, 5

*Snider v. Upjohn Co.*,
   115 F.R.D. 536 (E.D. Pa. 1987) ......................................................... 6

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) .............................................................. 6

*Walsh v. Great Atl. & Pac. Tea Co.*,
   726 F.2d 956 (3d Cir. 1983) .............................................................. 8

## Rules

Fed. R. Civ. P. 23(a)(1) ......................................................................... 5

Fed. R. Civ. P. 23(a)(2) ......................................................................... 6

Fed. R. Civ. P. 23(a)(3) ...................................................................... 6, 7

Fed. R. Civ. P. 23(a)(4) ......................................................................... 7

Fed. R. Civ. P. 23(b)(2) ......................................................................... 8

Fed. R. Civ. P. 23(c)(2) ....................................................................... 14

Fed. R. Civ. P. 23(e) ............................................................................................. 8, 14

**Other Authorities**

*Internet, Broadband Fact Sheet*, Pew Research Center (Nov. 13, 2024),
https://www.pewresearch.org/internet/fact-sheet/internet-broadband/ ....................................... 6

Matthew W. Brault, *Americans With Disabilities: 2010*, U.S. Census Bureau (July 2012),
https://www2.census.gov/library/publications/2012/demo/p70-131.pdf ..................................... 6

William B. Rubenstein, 3 *Newberg on Class Actions* § 8:15 (6th ed. 2022) ............................. 14

## I.    INTRODUCTION

Plaintiff requests the Court preliminarily approve the parties' class action settlement Agreement.[1] The Agreement is fair and reasonable, and provides substantial benefits to the class, while avoiding the delay, risk, and cost of litigation. Seven different judges in this District have approved substantially similar agreements in *Douglass v. Melnor, Inc*., No. 2:25-cv-00670, 2025 U.S. Dist. LEXIS 203770 (W.D. Pa. Oct. 16, 2025)  (Hardy, J.) ("*Melnor*"); *Douglass v. Whitestone Home Furnishings, LLC d/b/a SAATVA*, No. 2:25-cv-00460, 2025 U.S. Dist. LEXIS 188296 (W.D. Pa. Sep. 15, 2025)  (Cercone, J.) ("*Saatva*"); *Douglass v. iFit Inc.*, No. 2:23-cv-00917, 2024 U.S. Dist. LEXIS 243178 (W.D. Pa. Apr. 11, 2024) (Horan, J.) ("*iFit*"); *Douglass v. P.C. Richard & Son, LLC*, No. 2:22-cv-00399, 2023 U.S. Dist. LEXIS 246830 (W.D. Pa. June 27, 2023) (Kelly, J.) ("*P.C. Richard*"); *Douglass v. Optavia, LLC*, No. 2:22-cv-00594, 2023 U.S. Dist. LEXIS 246835 (W.D. Pa. Jan. 23, 2023) (Wiegand, J.) ("*Optavia*"); *Murphy v. The Hundreds Is Huge, Inc.*, No. 1:21-cv-00204, 2022 U.S. Dist. LEXIS 211942 (W.D. Pa. Nov. 17, 2022) (Lanzillo, J.) ("*The Hundreds*"); and *Murphy v. Charles Tyrwhitt, Inc.*, No. 1:20-cv-00056, 2022 U.S. Dist. LEXIS 255976 (W.D. Pa. Feb. 16, 2022) (Baxter, J.) ("*Charles Tyrwhitt*").

## II.    HISTORY OF THE LITIGATION

In March 2025, Plaintiff attempted to access Defendant's online store at https://levainbakery.com/ (the "Website"). Doc. 1, ¶ 3, 37. Plaintiff was unable to do so because the Website was incompatible with screen-reader technology. *Id*., ¶¶ 27, 36. On November 4, 2025, Plaintiff filed a class action complaint, alleging that Defendant lacks—and has always lacked—policies and practices necessary to make the Website accessible to blind users, in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. ("ADA"). *Id*., ¶¶ 6, 42–43,

---

[1] The Agreement accompanies Plaintiff's Motion as Exhibit 1.

45. The Agreement resolves these claims on a class-wide basis.

## III.    SUMMARY OF THE AGREEMENT

### A.    Key Terms Used in the Agreement

"Settlement Class" means "a national class of individuals who are Blind and/or who have a Visual Disability and who use Appropriate Auxiliary Aids and Services to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from attempting to access, the Website from the United States." Ex. 1, § 2.43.

The Agreement requires Defendant to "ensure the U.S. portions of the Website are Accessible by the end of the Agreement Term." *Id*., § 4.1. To be Accessible, website content must "conform[ ] to the success criteria of the WCAG 2.1 A/AA…" *Id*., §§ 2.8, 2.49. WCAG 2.1 A/AA are guidelines for ensuring that digital content is perceivable, operable, understandable, and robust. The Department of Justice relies on the WCAG to resolve similar enforcement actions.

"Agreement Term" means the time from the "Effective Date" through the end of three (3) years from the "Effective Date." Ex. 1, §§ 2.11, 2.21.

### B.    Remediation Obligations

Defendant must meet various other benchmarks during the Agreement Term, which ensures Defendant does not delay its remediation efforts. They include:

| Time from Effective Date | Benchmark | Section(s) of Settlement Agreement |
|---|---|---|
| Immediately | Request that vendors for each new, renewed, or renegotiated contract of Third-Party Content provide Third-Party Content that is Accessible | 6.2 |
| Immediately | Provide Accessibility training to all newly-hired employees within the latter of 12 months of the Effective Date or 180 days of the date they are hired | 12.2 |
| Immediately | Complete Customer Service Training | 13 |

| Immediately | Perform Semi-Annual Automated Accessibility Audits to evaluate whether the Digital Properties are Accessible | 16.1 |
|---|---|---|
| Immediately | Perform Annual End-User Accessibility Testing to evaluate whether the Digital Properties are Accessible | 17.1 |
| 3 Months | Designate the Accessibility Coordination Team | 7.1 |
| 6 Months | Retain Accessibility Consultant | 8.1 |
| 12 Months | Complete Initial Accessibility Audit | 9.1 |
| 12 Months | Develop the Accessibility Strategy | 10.1 |
| 9 months | Develop the Accessibility Statement | 11.1 |
| 9 Months | Add link at the beginning of the Digital Properties directing screen reader users to the Accessibility Statement | 11.10 |
| 12 Months | Complete Accessibility Training | 12.1 |
| 12 Months | Modify existing bug fix policies, practices, and procedures to include the elimination of bugs that create Accessibility barriers | 14.1 |
| 12 Months | Provide support during business hours to assist Blind or Visually Disabled persons with resolving Accessibility issues regarding the Digital Properties | 15 |

## C.    Additional Obligations of the Parties

**1.    Accessibility Training.** Defendant is required to train all employees responsible for design, development, or maintenance to ensure the future design, development, and maintenance of the Digital Properties are and remain Accessible. Ex. 1, § 12.1.

**2.    Defendant's Reporting Obligations.** To ensure Defendant's compliance, the Agreement requires periodic reporting by Defendant to class counsel. Ex. 1, §§ 20.1, 23.1.

**3.    Plaintiff's Compliance Monitoring Obligations.** Plaintiff is entitled to visit the Digital Properties at any time, without notice to Defendant, for the purpose of evaluating Defendant's compliance with Sections 4 through 18 of the Agreement. Ex. 1, § 19.

**4.    Enforcement and Dispute Resolution.** The parties will request that the

Court's dismissal order retain jurisdiction to enforce the Agreement. *See Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375 (1994). Ex. 1, § 29.2. The parties must meet and confer about any disputes and attend mediation before submitting disputes to the Court. *Id.*, § 24.

### D.    Enjoining Settlement Class Members from Asserting Released Claims

The Agreement obliges Plaintiff to request that the Court enjoin Settlement Class Members from bringing any "Released Injunctive Claims." Ex. 1, § 29.1. This term is defined as:

> Any and all claims, rights, demands, charges, complaints, actions, suits, and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for injunctive, declaratory, or non-monetary relief, based on the Accessibility of the Digital Properties to individuals who are Blind and/or who have a Visual Disability, including any injunctive, declaratory, or non-monetary claims under: (i) the ADA; and (ii) any state or local statutory, administrative, regulatory, or code provisions that either (a) directly incorporate the ADA, (b) set forth standards or obligations coterminous with or equivalent to the ADA.

*Id.*, § 2.40. The Court should enjoin the pursuit of Released Injunctive Claims because it "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent re-litigation of settled questions at the core of a class action." *In re Prudential Ins. Co. Of Am. Sales Prac. Litig.*, 261 F.3d 355, 365–66 (3d Cir. 2001) (quotations and citations omitted). Courts approved identical requests in *Melnor* (Doc. 9-1, §§ 2.41, 29.1), *Saatva* (Doc. 33-1, §§ 2.41, 29.1), *iFit* (Doc. 18-1, §§ 2.36, 24.1), *P.C. Richard* (Doc. 31-1, §§ 2.41, 29.1), *Optavia* (Doc. 12-1, §§ 2.38, 28.1), *The Hundreds* (Doc. 41 at Ex. A, §§ 2.35, 29.1), and *Charles Tyrwhitt* (Doc. 47-1, §§ 2.32, 26.1).

### E.    Incentive Award for Plaintiff

If approved, Defendant will pay an incentive award of $2,500.00 to Plaintiff. Ex. 1, § 22.1. This amount is reasonable and should be approved. *See Jahoda v. Redbox Automated Retail, Inc.*, No. 2:14-cv-01278, Docs. 73, p.7; 80 (W.D. Pa. Oct. 31, 2017) (approving $5,000.00 awards to the class representatives as part of class action settlement resolving nationwide ADA claims);

*Dieter v. Aldi, Inc.*, No. 2:18-cv-00846, Docs. 60, p.7; 63 (W.D. Pa. Aug. 29, 2019) (same).

### F.    Attorneys' Fees and Costs

If approved, Defendant will pay Plaintiff's attorneys' fees and costs up to $49,000.00. Ex. 1, § 25.1. A separate fee petition will show that Plaintiff's fees are reasonable.

## IV.    ARGUMENT

The Court should grant Plaintiff's Motion because (A) the class should be certified for settlement purposes; (B) the settlement is fair, reasonable, and adequate; and (C) the notice and notice plan meet due process requirements.

### A.    The Court Should Certify the Class for Settlement Purposes

Plaintiff seeks certification of the following Settlement Class:

> [A] national class of individuals who are Blind and/or who have a Visual Disability and who use Appropriate Auxiliary Aids and Services to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from attempting to access, the Website from the United States.

Ex. 1, § 2.43. Courts found identical classes satisfied Rules 23(a) and 23(b)(2) in *Melnor*, 2025 U.S. Dist. LEXIS 203770, at *3 (W.D. Pa. Oct. 16, 2025); *Saatva*, 2025 U.S. Dist. LEXIS 188296, at *4; *iFit*, 2024 U.S. Dist. LEXIS 243178, at *4; *P.C. Richard*, 2023 U.S. Dist. LEXIS 246830, at *4; *Optavia*, 2023 U.S. Dist. LEXIS 246835, at *4; *The Hundreds*, 2022 U.S. Dist. LEXIS 211942, at *4; and *Charles Tyrwhitt*, 2022 U.S. Dist. LEXIS 255976, at *4. This Court should too.

#### 1.    Plaintiff Satisfies the Requirements of Rule 23(a)

##### (i)    Numerosity

The Court must find "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticability does not mean impossibility; it means class certification is proper in light of the difficulty of joining all members of the putative class. *Cureton v. NCAA*,

No. 97-cv-00131, 1999 U.S. Dist. LEXIS 9706, at *15 (E.D. Pa. July 1, 1999). The inquiry is focused on judicial economy. While there is no precise standard, a class of more than 40 individuals typically satisfies the requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). General knowledge and "common sense assumptions" may be applied to the numerosity determination. *See Snider v. Upjohn Co*., 115 F.R.D. 536, 539 (E.D. Pa. 1987). The numerosity requirement is satisfied. First, U.S. Census Bureau data from 2010 shows that "[a]bout 8.1 million people . . . had difficulty seeing, including 2.0 million people who were blind or unable to see." Matthew W. Brault, *Americans With Disabilities: 2010*, U.S. Census Bureau (July 2012), https://www2.census.gov/library/publications/2012/demo/p70-131.pdf. Second, about 96% of U.S. adults use the internet. *Internet, Broadband Fact Sheet*, Pew Research Center (Nov. 13, 2024), https://www.pewresearch.org/internet/fact-sheet/internet-broadband/. Together, about 7.8 million U.S. adults who have difficulty seeing, including about 1.9 million U.S. adults who are blind, use the internet. Considering the number of visually disabled internet users who may seek to access the Website, the numerosity requirement is met.

### (ii)    Commonality

The Court must find "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. . . . Because the requirement may be satisfied by a single common issue, it is easily met[.]" *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). The commonality requirement is satisfied because there are many issues common to Plaintiff and the Class, like whether they have been denied equal access to Defendant's Website because it is not compatible with screen reader technology.

### (iii)    Typicality

The Court must find the plaintiff's claims are typical of the class members' claims. Fed. R.

Civ. P. 23(a)(3). "Typicality entails an inquiry [into] whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Baby Neal*, 43 F.3d at 57–58. "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims…" *Id.* at 58. The typicality requirement is satisfied because Plaintiff's and the Class Members' claims arise from the same practices and are based on the same theory: that Defendant failed to make its Website accessible to individuals who have a visual disability.

### (iv)    Adequacy

The Court must find "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is met where the plaintiff's interests are not antagonistic to the class members' interests, and counsel for the plaintiff is experienced and qualified to conduct the litigation. *Baby Neal*, 43 F.3d at 55.

First, Plaintiff will protect the interests of the class because they all share the same injuries and seek the same relief—access to Defendant's Website. *See Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)) ("Because the plaintiffs seek the same injunctive relief as all members of the class, the court 'can find no potential for conflict between the claims of the complainants and those of the class as a whole.'"). Second, Plaintiff retained experienced counsel with a proven track record of adequately representing similar classes. [2]

### 2.    Plaintiff Satisfies the Requirements of Rule 23(b)(2)

Plaintiff seeks injunctive relief under Rule 23(b)(2). A class may be certified under Rule

---

[2] Plaintiff's counsel's resumes are attached to Plaintiff's motion as Exhibit 3.

23(b)(2) if Rule 23(a)'s prerequisites are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Because relief under Rule 23(b)(2) is "cohesive in nature," a plaintiff "can, as a matter of due process, bind all absent class members by a judgment." *Walsh v. Great Atl. & Pac. Tea Co*., 726 F.2d 956, 963 (3d Cir. 1983). Rule 23(b)(2) cases "frequently [serve] as the vehicle for civil rights actions and other institutional reform cases[.]" *Baby Neal*, 43 F.3d at 58–59.

Certification under Rule 23(b)(2) is appropriate because this case concerns a single, common contention: that Defendant failed to make its Website accessible to individuals who have a visual disability. In so failing, Defendant acted or refused to act on grounds generally applicable to the Settlement Class. The injunctive relief that Plaintiff seeks—changes to Defendant's policies and practices—is sought to benefit, and indeed will benefit, the Class as a whole.

### B.    The Agreement is Fair, Reasonable, and Adequate, and Should be Preliminarily Approved

A class action can be settled only if the court finds the settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e). This inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." *In re NFL Players Concussion Inj. Litig*., 821 F.3d 410, 436 (3d Cir. 2016). "In cases of settlement classes, where district courts are certifying a class and approving a settlement in tandem, they should be 'even more scrupulous than usual when examining the fairness of the proposed settlement.'" *Id*. Still, "whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998) ("*Prudential*").

1.      **The Agreement is Presumptively Fair**

Courts "apply an initial presumption of fairness in reviewing a class settlement when: '(i) the negotiations occurred at arm's length; (ii) there was sufficient discovery; (iii) the proponents of the settlement are experienced in similar litigation; and (iv) only a small fraction of the class objected.'" *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 436.

(i)      **Negotiations Occurred at Arms' Length**

The parties devoted months to resolution. Plaintiff's counsel drew upon their experience resolving similar claims to achieve a resolution that is comparable to those in *Melnor*, *Saatva*, *iFit*, *P.C. Richard*, *Optavia*, *The Hundreds*, and *Charles Tyrwhitt*. Negotiations were conducted without regard to the payment of attorneys' fees, meaning Plaintiff did not bargain away any relief to receive greater fees. The Court should not "intrude overly on the parties' hard-fought bargain." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326 (3d Cir. 2019).

(ii)     **Robust Discovery Was Not Required Because the Accessibility of Defendant's Website Was Obtained Independently**

Plaintiff conducted multiple rounds of manual testing to determine whether the Website is equally accessible to blind shoppers. Plaintiff does not require additional discovery to determine whether the Website is equally accessible—it's not—or whether Defendant's current practices are sufficient—they're not. While discovery would have generated greater fees for counsel, it would not have secured better relief for the Class.

(iii)    **Plaintiff and Plaintiff's Counsel Are Experienced in Similar Litigation**

Plaintiff retained experienced and competent counsel who fairly and adequately protected the interests of the Class. Plaintiff's counsel have years of experience prosecuting digital accessibility claims. They are sufficiently experienced.

#### (iv)    Given the Terms, Plaintiff Anticipates No Objections

Plaintiff does not anticipate objectors as the relief obtained exceeds or is comparable to the settlements approved in *Melnor*, *Saatva*, *iFit*, *P.C. Richard*, *Optavia*, *The Hundreds*, and *Charles Tyrwhitt*, and in similar enforcement actions brought by DOJ.

### 2.    The *Girsh* and *Prudential* Factors Favor Preliminary Approval

In *Girsh v. Jepson*, the Third Circuit identified nine considerations when assessing the fairness of a proposed class settlement:

> (1) the complexity, expense and likely duration of the litigation[;] (2) the reaction of the class to the settlement[;] (3) the stage of the proceedings and the amount of discovery completed[;] (4) the risks of establishing liability[;] (5) the risks of establishing damages[;] (6) the risks of maintaining the class action through the trial[;] (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery[;] [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 156–57 (3d Cir. 1975). The settling parties must prove that "the *Girsh* factors weigh in favor of approval of the settlement." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). "A district court's findings under the *Girsh* test are those of fact. Unless clearly erroneous, they are upheld." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 437.

Later, in *Prudential*, the Third Circuit held that, because of "a sea-change in the nature of class actions," it might be useful to expand the *Girsh* factors to include:

> [1] the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and

[6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

148 F.3d at 323. "Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013).

### (i)        Complexity, Expense, And Likely Duration of Litigation

"The first [*Girsh*] factor captures the probable costs, in both time and money, of continued litigation." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 437. A roadmap exists for what litigation could look like. A Rule 26(f) Report filed in another digital accessibility case identified the parties plans to conduct robust discovery into the defendant's polices, practices, and training, and the plaintiff's internet history and motivations for accessing the website at issue. *Douglass v. Lifetime Products Inc.*, No. 2:25-cv-00782, Doc. 163 (W.D. Pa. Sept. 3, 2025). The parties anticipated written discovery, depositions, expert reports, and cross-motions for summary judgment, none of which would yield better relief than the Agreement provides. There are no reasonable grounds to justify the complexity, expense, and duration of continued litigation.

### (ii)       Reaction of Class To Settlement

"The second *Girsh* factor attempts to gauge whether members of the class support the settlement." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 438. Because the Agreement exceeds or is comparable to every publicly available settlement resolving digital accessibility claims of which Plaintiff's counsel are aware, it is unlikely the Agreement will draw criticism from industry advocates or the class.

### (iii)      Stage of Proceedings and Discovery Completed

"The third *Girsh* factor captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an

11

adequate appreciation of the merits of the case before negotiating." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 438–39. Counsel have prosecuted similar claims since 2016. Plaintiff has filed such claims since 2020. Plaintiff and his legal team visited Defendant's Website and developed firsthand knowledge of the access barriers that exist. From that knowledge, and their experience prosecuting similar claims, Plaintiff and his counsel adequately appreciated the merits of the case and the available relief. Because the Agreement achieves the very relief Plaintiff would request at summary judgment or trial, the Court should not draw a negative inference from the parties' early resolution.

### (iv)    Risks of Establishing Liability and Damages

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 439. These factors favor settlement because Plaintiff cannot anticipate achieving more complete relief than the Agreement provides. In addition, Defendant might raise various affirmative defenses, including that it has no obligations under the ADA or that modifying its Website would impose an undue burden. Given the Agreement's relief and available defenses, these factors favor resolution.

### (v)    Risks of Maintaining Class Action Through Trial

The sixth *Girsh* factor is "toothless" in a settlement class since "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 440. In any event, this factor weighs in favor of settlement still because Plaintiff has no adverse interests to those of the class, and is unlikely to develop any such interests.

### (vi)    Ability of Defendant to Withstand Greater Judgment

"The seventh *Girsh* factor is most relevant when the defendant's professed inability to pay

12

is used to justify the amount of the settlement." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 440. This factor is less relevant because Plaintiff seeks injunctive relief. Even so, the Agreement cuts no corners in outlining Defendant's obligations. No greater judgment is reasonably available.

#### (vii)    Range of Reasonableness of Settlement in Light of Best Possible Recovery and All Attendant Risks of Litigation

"In evaluating the eighth and ninth *Girsh* factors, [courts] ask whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d at 440. "The[se] factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id*. The Agreement represents good value for any case. If Plaintiff were successful at trial, he would be entitled only to the relief the Court deemed appropriate. In making a request for such relief, Plaintiff would direct the Court to the settlements achieved by the DOJ in closely analogous cases and to the settlements approved in this District, which the Agreement tracks. Once again, because the Agreement exceeds or is comparable to the standards set in those cases, the eighth and ninth *Girsh* factors weigh in favor of approval.

#### (viii)    *Prudential* Factors

The few *Prudential* factors that are relevant to claims for injunctive relief support approval. The third factor compares the "results achieved by the settlement for individual class . . . members and the results achieved—or likely to be achieved—for other claimants[.]" *Prudential*, 148 F.3d at 323. No other claimant is likely to achieve better relief. The fifth factor considers "whether any provisions for attorneys' fees are reasonable[.]" *Id*. Defendant has agreed to pay Plaintiff's fees up to $49,000.00. Ex. 1, § 25. A fee petition will show why these fees are reasonable.

### C.    The Proposed Notice and Notice Plan Satisfy the Requirements of Rule 23(e) and Due Process

"The court must direct notice [of a proposed class settlement] in a reasonable manner to all

class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). Rule 23(b)(2) contains "no rigid rules to determine whether a settlement notice to class members satisfies constitutional and Rule 23(e) requirements." William B. Rubenstein, 3 *Newberg on Class Actions* § 8:15 (6th ed. 2022); Fed. R. Civ. P. 23(c)(2). In cases certified under Rule 23(b)(2), "the stringent requirement of Rule 23(c)(2) that members of the class receive the 'best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts,' is inapplicable." *Kaplan v. Chertoff*, No. 06-cv-05304, 2008 U.S. Dist. LEXIS 5082, at *38-39 (E.D. Pa. Jan. 24, 2008) (quotations omitted). "Rule 23(e) makes some form of post-settlement notice mandatory, although the form of notice is discretionary because Rule[23](b)(2) classes are cohesive in nature." *Id.* at *39 (alterations and quotations omitted).

Notice is adequate where it is "well-calculated to reach representative class members," and describes the litigation, defines the class, explains the settlement's terms, provides information on the fairness hearing, describes how to file objections, states where complete information is located, and provides contact information. *Kaplan*, 2008 U.S. Dist. LEXIS 5082, at *36–37, *41 (citing *Prudential*, 148 F.3d at 327 n.86)). The proposed notice and notice plan meet these requirements.

The Long-Form Notice, *see* Agreement Ex. 1, describes the litigation, defines the Settlement Class, explains the Agreement's terms, provides information on the fairness hearing, describes the objection process, states where complete information is located, and provides contact information so Settlement Class Members can contact class counsel with questions.

The Notice Plan, *see* Ex. 2, requires Defendant to create a settlement website and link the settlement website on Defendant's Website, social media, blogs, and newsletter. The Notice Plan requires Plaintiff to contact eleven advocacy organizations to request they notify their members of

the settlement. Courts approved similar notices and notice plans in *Melnor*, *Saatva*, *iFit*, *P.C. Richard*, *Optavia*, *The Hundreds*, and *Charles Tyrwhitt*. This Court should too.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court certify the class for settlement purposes, preliminarily approve the Agreement, and schedule a fairness hearing no less than ninety (90) days after granting preliminary approval so the Parties may notify the Settlement Class.

Respectfully submitted,

Dated: November 25, 2025

*/s/ Stephanie Moore*

Kevin W. Tucker (He/Him) (PA 312144)
Kevin J. Abramowicz (He/Him) (PA 320659)
Chandler Steiger (She/Her) (PA 328891)
Stephanie Moore (She/Her) (PA 329447)
Kayla Conahan (She/Her) (PA 329529)
Jessica Liu (She/Her) (PA 328861)
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 503
Pittsburgh, PA 15208
Tel. (412) 877-5220
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com
kconahan@eastendtrialgroup.com
jliu@eastendtrialgroup.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 25, 2025, I will cause a true and correct copy of the foregoing document to be served on Defendant through the Court's Electronic Filing System.


Dated: November 25, 2025                      */s/ Stephanie Moore*
                                              Stephanie Moore